UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEROME MATTHEWS #375577,

                    Petitioner,             Case No. 1:18-cv-357

v.                                    Hon. Janet T. Neff

RANDEE REWERTS,[1]

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a state prisoner's habeas corpus action brought under 28 U.S.C. § 2254. Petitioner Jerome Matthews is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility in Carson City, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of possession with intent to deliver less than 50 grams of cocaine, pursuant to Mich. Comp. Laws § 333.7401(2)(a)(iv). On May 11, 2015, the court sentenced Petitioner to a sentence of six to 50 years' imprisonment as a fourth-offense habitual offender.

On March 29, 2018, Petitioner timely filed his habeas corpus petition.

The petition raises five grounds for relief, as follows:

I.      Defense trial counsel was constitutionally ineffective in failing to object to the prior bad act evidence used at trial and the error satisfies the plain error doctrine.

---

[1] Because Petitioner has been transferred to the Carson City Correctional Facility, Randee Rewerts, the Warden at that facility, is substituted as the Respondent pursuant to Federal Rule of Civil Procedure 25(d) and the caption amended as set forth above.

II.    The danger of undue prejudice substantially outweighed any probative value in telling the jury that [Petitioner] was on parole, MRE 403. A mistrial should have been granted.

III.    The prosecutor committed misconduct and denied [Petitioner] a fair trial by violating his duty to produce endorsed res gestae witnesses, and the trial court reversibly erred by refusing to give a missing witness instruction.

IV.    The prosecution submitted insufficient evidence to convict [Petitioner] of possession with intent to deliver.

V.    Trial counsel was ineffective in several respects.[2]

(Pet., ECF No. 1 at PageID.6–12.) Respondent has filed an answer to the petition (ECF No. 9) stating that the petition should be denied as to all grounds because they are without merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I recommend that the petition be denied.

## Discussion

### I.    Factual Allegations

**Officer Aaron Rossin**. Aaron Rossin, a police officer with the City of Grand Rapids, testified that on November 13, 2014, he was called to assist State of Michigan employees with an inspection at 1901 Bradford in Grand Rapids. Four individuals were in the residence, including Petitioner. (ECF No. 10-3 at PageID.243.) After securing the occupants in the living room, Officer Rossin searched the bedroom and found drug paraphernalia. The other individuals with Officer Rossin found a plastic bag containing three separate baggies filled with white substances. Two of the baggies field tested positive for cocaine. In addition, another individual searching in the bedroom found a copy of Petitioner's birth certificate and almost $1,700 in cash in a jacket. Officer Rossin called two detectives for assistance. (*Id.* at PageID.245.)

---

[2] Petitioner has deleted the unexhausted portion of claim V in response to the Court's April 12, 2018 Order. (ECF Nos. 3, 4.)

**Randy Dockins**. Mr. Dockins testified that he was employed by the State of Michigan. Dockins was familiar with Petitioner because Petitioner had come to his office on several occasions. Dockins had also met Petitioner at Petitioner's residence on several occasions. He was present during the search of 1901 Bradford on November 13, 2014. (*Id.*) Dockins testified that he found a brown plastic garbage bag in the cupboards by the sink. He found three smaller baggies inside that were tied up and contained white chunky substances. In the bedroom he found a loaded syringe, used syringes, and Chore Boy—steel wool used for smoking crack. Another individual found a jacket in the closet that Dockins had seen Petitioner wearing on prior occasions, which contained Petitioner's birth certificate. Dockins had known Petitioner for eight or nine months leading up to that date, and Petitioner had not been employed during that time. Dockins testified that Petitioner had told him that he had not worked in 10 years. (*Id.* at PageID.246.) On cross-examination, Dockins said that Petitioner had recently moved to 1901 Bradford in the last couple of weeks or so. (*Id.* at PageID.247.)

**Christopher Thompson**. Mr. Thompson testified that he worked for the State of Michigan and was present at 1901 Bradford during the investigation on November 13, 2014. He was present in the bedroom and found a jacket containing Petitioner's birth certificate and approximately $1,680 in cash. (*Id.* at PageID.248–49.)

**Detective Todd Butler**. Detective Butler testified that he and his partner, Detective Preston, were called to assist parole with an incident at 1901 Bradford. When they arrived, Officer Rossin gave them evidence that he had collected. The evidence consisted of, among other things, two bags containing chunks of cocaine, Petitioner's jacket, approximately $1,600 found in the jacket, a digital scale, baggies with the corners missing, unused syringes and a crack pipe. Detective Butler testified that crack cocaine is typically packaged for sale by placing it in the

corner of a baggie, twisting it off and tearing the corner from the rest of the baggie. (*Id.* at PageID.252–53.)

**Detective Chad Preston**. Detective Preston was qualified as an expert in street-level sales of controlled substances. He submitted the suspected cocaine to the Michigan State Police Crime Laboratory, which conducted a controlled substance analysis, weighed the sample and returned it the Grand Rapids Police Department. One bag contained 19 grams of cocaine and the other contained 7.49 grams. The third bag contained cutting agent. Detective Preston testified that the most common denomination of crack cocaine is the $20 rock. Detective Preston opined that the total of 26 grams found at the residence, along with the other items, indicated that the cocaine was for sale or distribution and not personal use. (*Id.* at PageID.254–56.) Detective Preston also spoke with Petitioner at the time he was arrested. Petitioner initially denied that the cocaine belonged to him, but then stated that he had been doing cocaine every day. Petitioner said that he did it because he was a user and to make ends meet. Detective Preston testified that it was uncommon for an individual to both sell and use drugs and that the quantity found indicated that it was not for personal use. He also testified that later in the Petitioner offered to call someone who would "front" him 100 grams of cocaine. (*Id.* at PageID.257.)

**Detective Joseph Beracy**. Detective Beracy testified that on July 24, 2010, he executed a search warrant at 337 Pine Avenue in Grand Rapids. Petitioner was the listed individual for the search warrant. Detective Beracy encountered Petitioner during the search and found drugs, money, and packaging materials. The officers found a quantify of heroin and in excess of $1,000 on Petitioner's person. (*Id.* at PageID.258–59.)

**Sergeant James Wojczynski**. Sgt. Wojczynski testified that on April 18, 2008, he and another officer pulled into the parking lot of the Wealthy Street Market in Grand Rapids to investigate several subjects. Petitioner, who was present in the parking lot, ran into the back door of a nearby house. Sgt. Wojczynski and his partner apprehended Petitioner. After placing Petitioner in the patrol car, Sgt. Wojczynski searched the area Petitioner was apprehended and found a plastic bag containing 15 rocks of crack cocaine, some of which were individually wrapped into smaller baggies. A subsequent search of Petitioner at the jail yielded an additional plastic bag containing five rocks of crack cocaine and $350 in cash. (*Id.* at PageID.259–60.)

**Petitioner**. Petitioner elected to take the stand in support of his defense, testifying that the cocaine belong to Nancy Deeb, the woman with whom Petitioner was living at 1901 Bradford. Ms. Deeb died of a drug overdose several months before trial. Petitioner testified that he had been staying at the residence for about two weeks. Petitioner testified that he entered the residence that day and sat in a recliner chair, while another male was seated at a table facing the kitchen, and another woman was in the bedroom with Ms. Deeb. Petitioner said that the buzzer rang, and Ms. Deeb looked through the peephole and said it was the police. At that point she went into the bedroom and brought a brown plastic bag out and put it in the kitchen and then let the police in. Petitioner testified that the money in his jacket was from various jobs. (*Id.* at PageID.262–64.) Petitioner said that Ms. Deeb was using and selling drugs and that the drugs did not belong to him. Petitioner denied telling Detective Preston that the drugs were his. Petitioner did say that he told Detective Preston that he had used drugs in the past but that he had been to rehab and was no longer using. (*Id.* at PageID.265.)

**Randy Dockins**. On rebuttal, Mr. Dockins testified that following his testimony on direct, he reviewed his records and determined that he had never seen a single pay stub from Petitioner,

even though Petitioner was required to provide proof of employment if he had a job. Mr. Dockins also testified that he was a parole officer, and that Petitioner was one of his clients. (*Id.* at PageID.269.)

At the conclusion of the trial, the jury returned a verdict of guilty of possession with intent to deliver less than 50 grams of cocaine. The jury acquitted Petitioner of the charge of maintaining a drug house. (*Id.* at PageID.279.)

On direct appeal to the Michigan Court of Appeals, Petitioner, with the assistance of counsel and in a Standard 4 brief, raised nine issues, including the five issues he raises in his petition. By unpublished opinion issued on September 13, 2016, the Michigan Court of Appeals affirmed Petitioner's conviction but remanded for a *Crosby* hearing on his sentence to address the application of *People v. Lockridge*, 498 Mich. 358 (2015). (Mich. Ct. App. Op., ECF No. 10-5 at PageID.292–305.)

Petitioner then filed a pro per application for leave to appeal to the Michigan Supreme Court, raising five of the claims he had raised in the court of appeals and adding a claim by a motion to amend that he had been denied his Sixth Amendment right to counsel of his choice. (ECF No. 10-7 at PageID.415–22, 496–502.) By order entered April 4, 2017, the Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. (Mich. S. Ct. Order, ECF No. 10-7 at PageID.414.)

Petitioner filed a petition for writ of certiorari, which the United States Supreme Court denied.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a

state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Analysis

### A.    Ineffective Assistance of Counsel

### 1.    Prior Bad Acts Evidence

In his first claim, Petitioner asserts that he was denied his Sixth Amendment right to the effective assistance of counsel when his trial counsel failed to object to the other-act evidence at trial from Detective Beracy and Sgt. Wojczynski. The Michigan Court of Appeals rejected this claim as follows:

> In particular, MRE 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." While not admissible for propensity purposes, evidence of other acts may be admissible for other purposes, including intent, knowledge, preparation, scheme, plan, or system of doing an act. MRE 404(b)(1). To introduce evidence under MRE 404(b), the prosecutor must satisfy a four-part standard:

> First, the prosecutor must offer the "prior bad acts" evidence under
> something other than a character or propensity theory. Second, "the
> evidence must be relevant under MRE 402...." Third, the probative
> value of the evidence must not be substantially outweighed by unfair
> prejudice under MRE 403. Finally, the trial court, upon request, may
> provide a limiting instruction under MRE 105. [*People v. Knox*, 469
> Mich. 502, 509; 674 NW2d 366 (2004) (citations omitted).]

To be relevant, evidence must be both material and probative, meaning that the
evidence tends "to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without
the evidence." *People v. Crawford*, 458 Mich. 376, 388–389; 582 NW2d 785
(1998) (citation omitted). When the evidence is used for purposes of establishing
intent, "logical relevance dictates only that the charged crime and the proffered
other acts 'are of the same general category.'" *People v. VanderVliet*, 444 Mich.
52, 80; 508 NW2d 114 (1993), amended 445 Mich. 1205 (1994) (citation omitted).

In this case, the prosecutor used the evidence of defendant's previous drug-related
arrests to argue that defendant intended to sell the quantity of cocaine recovered at
1901 Bradford. First, this was a proper, non-propensity purpose for the introduction
of the evidence under MRE 404(b)(1). Second, by pleading not guilty, defendant
placed all elements of the offense at issue, including the question of his intent, and
thus the evidence, which tended to make it more likely that defendant intended to
sell the drugs in question, was both material and probative. While the past instances
were not identical to defendant's current conduct, all the instances in question
involved possession of drugs in circumstances indicative of an intent to distribute,
including the quantity of drugs in defendant's possession, the quantity of cash
involved, and the packaging of the narcotics. *See generally People v. Wolfe*, 440
Mich. 508, 524–525; 489 NW2d 748 (1992), amended 440 Mich. 508 (1992). In
other words, in each instance, defendant's conduct fell within the same "general
category," and the events were sufficiently similar to be logically relevant to the
issue of defendant's intent in the present case. *See VanderVliet*, 444 Mich. at 79–
80. Third, while the evidence of defendant's prior bad acts was prejudicial to
defendant, it was not unfairly so, and the risk of unfair prejudice did not
substantially outweigh the evidence's probative value. See MRE 403; *People v.
McGhee*, 268 Mich. App 600, 613–614; 709 NW2d 595 (2005). Finally, the trial
court gave a limiting instruction on the use of the prior bad acts evidence, mitigating
the risk of any prejudicial effect. *See People v. Orr*, 275 Mich. App 587, 593; 739
NW2d 385 (2007). Overall, we are persuaded that the evidence in question was
admissible, and counsel was not ineffective for failing to raise a meritless objection.

Moreover, even assuming counsel could have succeeded on an objection to the
MRE 404(b) evidence, defendant has not overcome the presumption that the
decision not to object was a matter of trial strategy and defendant has not
established a reasonable probability that, but for counsel's failure to object, the
outcome of the trial would have been different. At trial, part of defendant's
testimony was that he had been "involved" with drugs all his life, but he asserted

9

that he had gone through rehab and that he was no longer using or selling. By admitting that he had a history with drugs, defendant had a means of explaining some of his comments to police, including, for example, his remark that he had the connections to call someone to obtain drugs. Given that admitting defendant's history with drugs appears to have been part of a trial strategy, counsel may have reasonably concluded that there was no reason to object to the other acts evidence and thus defendant has not overcome the presumption that counsel's decision not to object was a matter of strategy. In addition, with regard to the question of prejudice, there was ample evidence to support the jury's verdict independent of the other act testimony, including the quantity of drugs found in the residence, the packaging materials, and the money recovered in defendant's jacket, as well as police testimony that defendant admitted he had a drug addiction and sold drugs "to make ends meet." Further, the jury acquitted defendant of maintaining a drug house, belying defendant's claim that the other-acts evidence caused the jury to convict defendant merely on the basis of his criminal propensities. On this record, defendant has not shown that he was prejudiced by counsel's failure to object to the MRE 404(b) evidence. On the whole, defendant has not demonstrated that he was denied the effective assistance of counsel based on counsel's failure to object to the prior bad acts evidence.

(ECF No. 10-5 at PageID.294–95 (footnote omitted).)

This Court is bound by the Michigan Court of Appeals' application of state law. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements...."); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018); *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A

court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, considering the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and Section 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question [before the habeas court] is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner fails to show that the Michigan Court of Appeals decision on this claim constituted an unreasonable application of *Strickland*. First, as the court explained, because an objection to admission of the prior-acts evidence would have been rejected, counsel could not have been ineffective for failing to raise the argument. *See Ludwig v. United States*, 162 F.3d 456, 459

11

(6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel."). Second, Petitioner offers no reason reject the state-court's determination that Petitioner failed to overcome the presumption that counsel's decision not to object could be considered sound trial strategy. Indeed, as the court noted, such evidence was consistent with his testimony at trial about his involvement with drugs in the past and his continuing ability to obtain drugs. Finally, given the substantial evidence of Petitioner's guilt apart from the other-acts evidence, the state court properly concluded that Petitioner failed to demonstrate prejudice to support his claim. Therefore, Petitioner is not entitled to relief on this claim.

### 2.    Other Grounds

In his fifth ground, Petitioner alleges that his trial counsel "was ineffective in other respects" without providing specific examples. It appears that Petitioner intends to incorporate the ineffective assistance arguments he made in his Standard 4 brief. The court of appeals addressed and rejected those grounds as follows:

> First, defendant argues that counsel was ineffective for waiving the preliminary examination because if the preliminary examination [sic] been conducted, exculpatory testimony would have been revealed. Defendant has failed to establish the factual predicate of this claim because defendant has not asserted who would have testified on his behalf nor has he shown what testimony these witnesses would have given. *See People v. Cooper*, 309 Mich. App 74, 80; 867 NW2d 452 (2015). Absent such evidence, defendant also has not shown prejudice from the waiver of the preliminary examination. Given that defendant's conviction "was based on proof beyond a reasonable doubt, we can surmise that had a preliminary examination been conducted, defendant would have been bound over to circuit court for trial since the lesser standard of probable cause is used at preliminary examination." *People v. McGee*, 258 Mich. App 683, 698; 672 NW2d 191 (2003). Quite simply, on this record, defendant has not shown that counsel was ineffective for waiving the preliminary examination or that, absent waiver of the preliminary examination, there was a reasonable probability of a different outcome.
>
> Second, defendant also claims that counsel failed to obtain the "discovery package," which appears to refer mainly to police reports. The lower court record includes a discovery request by defense counsel, specifically requesting police

reports and numerous other items. There is no indication on the record that counsel did not receive the police reports and other relevant discovery materials, and thus defendant has not established the factual predicate of his claim. *See Cooper*, 309 Mich. App at 80. Further, there is no indication that any materials purportedly not received would have benefited defendant's case. Absent such evidence, defendant has not established that counsel's performance fell below objective standards of reasonableness or that, but for these alleged errors, there is a reasonable probability of a different outcome.

Third, defendant next argues that counsel was ineffective for failing to introduce testimony from Leona Casteneda and Timothy Hernandez, who were also in the apartment at the time of the search and who allegedly would have testified that the cocaine did not belong to defendant. However, defendant failed to provide an affidavit or other offer of proof from either witness, and there is simply no evidence in the record to support the contention that Hernandez or Casteneda would have provided exculpatory testimony. Thus, defendant has not established the factual predicate of his claim, he cannot establish that counsel's failure to present their testimony deprived him of a substantial defense, and he has not shown that counsel's failure to call these witnesses constituted ineffective assistance. *See People v. Putman*, 309 Mich. App 240, 249; 870 NW2d 593 (2015).

Fourth, defendant next argues that counsel was ineffective for failing to make an opening statement. This argument is factually meritless because the record reveals that counsel delivered an opening statement. In any event, whether to give an opening statement is a matter of trial strategy. *People v. Payne*, 285 Mich. App 181, 190; 774 NW2d 714 (2009).

Fifth, defendant also asserts that counsel failed to "effectively" cross-examine witnesses because he only cross-examined "1 or 2 of the prosecution witnesses and only ask[ed] one or two questions." In actuality, the record shows that counsel cross-examined four of the seven prosecution witnesses, asking numerous questions. How to cross-examine witnesses is presumed to be a matter of trial strategy. *See People v. Petri*, 279 Mich. App 407, 413; 760 NW2d 882 (2008). Defendant has not explained with any specificity how counsel's cross-examination was deficient, and he certainly has not overcome the presumption that counsel's cross-examination decisions were a matter of trial strategy. Thus, defendant has not established that counsel's performance fell below objective standards of reasonableness or that, but for counsel's alleged errors, there is a reasonable probability of a different outcome.

Finally, defendant argues that counsel was ineffective for failing to object to police testimony regarding defendant's statement in which he admitted that he sold drugs to fund his drug addiction and to make ends meet. Relevant to this argument, the record makes clear that defendant was advised of his rights and that he voluntarily agreed to speak with police. Defendant does not assert otherwise on appeal. Generally, "when a suspect has been afforded Miranda warnings and affirmatively waives his Miranda rights, subsequent incriminating statements may be used

against him." *People v. Tanner*, 496 Mich. 199, 209; 853 NW2d 653 (2014). Nonetheless, defendant contends that his statement was involuntary, and thus inadmissible, because it was obtained through means of "trickery" and "deception." However, defendant fails to identify this supposed trickery or deception on the part of the police, and there is certainly nothing in the record indicative of the type of intimidation, coercion, or deception that might render an otherwise voluntary statement involuntary. *See generally People v. Akins*, 259 Mich. App 545, 564–565; 675 NW2d 863 (2003); *People v. Hicks*, 185 Mich. App 107, 113; 460 NW2d 569 (1990). Any objection by counsel would have been futile, and counsel is not ineffective for failing to make futile objections. *Horn*, 279 Mich. App at 39–40. Overall, defendant has not met his burden of demonstrating ineffective assistance of counsel. *Swain*, 288 Mich. App at 643.

(ECF No. 10-5 at PageID.296–97.)

The court of appeals' resolution of these issues was reasonable and well-supported by the record. Petitioner provides no factual basis to conclude that counsel was ineffective in any of the ways set forth above. Accordingly, Petitioner is not entitled to relief on these claims.

### B.    Parole Status

In his second ground, Petitioner asserts that the court of appeals erred in concluding that the trial court abused its discretion in denying a mistrial based on admission of evidence that Petitioner was on parole at the time of the incident in question. The court of appeals rejected the claim as follows:

In this case, Detective Todd Butler testified that, on the day of the search, he and his partner "responded to assist parole with an incident" at 1901 Bradford. Considering this remark, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a mistrial because the officer's reference to parole was brief and did not identify defendant as a parolee. The jury knew that three people other than defendant were located in the apartment at the time of the search. Thus, to the extent the jury could infer that the statement referred to one of the individuals in the home being a parolee, it did not establish that defendant was the parolee. Further, the officer's answer was also volunteered; he was not asked why he responded to the apartment. The brief and nonspecific mention of "parole," despite being made by a law enforcement officer and therefore subject to additional scrutiny, was not so egregious as to require a mistrial. *Holly*, 129 Mich. App at 415–416; *Gonzales*, 193 Mich. App at 266. Moreover, the trial court twice issued a curative instruction, reminding the jurors that any mention of parole was not relevant to whether defendant was guilty of the charged crimes. A curative

instruction is presumed to alleviate prejudice. *Horn*, 279 Mich. App at 37. Accordingly, the denial of the motion for a mistrial was not an abuse of discretion.

Defendant also argues that, during the prosecution's rebuttal, the trial court erroneously admitted evidence of his status as a parolee. According to defendant, this evidence of his parole status was inadmissible because it was irrelevant and, if relevant, it was more prejudicial than probative.

We review the trial court's decision to admit evidence for an abuse of discretion. *People v. Mardlin*, 487 Mich. 609, 614; 790 NW2d 607 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich. App at 217. "[T]he trial court's decision on a close evidentiary question such as this one ordinarily cannot be an abuse of discretion." *People v. Sabin* (*After Remand*), 463 Mich. 43, 67; 614 NW2d 888 (2000).

In this case, the trial court allowed rebuttal testimony from Randy Dockins regarding Dockins's monitoring of defendant's employment pursuant to Dockins's duties as defendant's parole officer. Specifically, Dockins identified himself as defendant's parole officer, he noted parolees were required to provide proof of employment, and he discussed his recordkeeping in regard to a parolee's employment status. Dockins then testified that, based on a review of his records, defendant had not provided him with paystubs or check stubs. In addition, Dockins testified that, through GPS monitoring of defendant's location, Dockins had observed that defendant "wasn't working when he was telling me he was working." The trial court allowed this testimony after concluding that defendant opened the door to the issue of Dockins's knowledge of defendant's whereabouts and employment. In this regard, defendant testified at trial that he saved the large sum of money found in his jacket by working various jobs and taking items to scrap yards. To support this claim, defendant testified that he "was turning in scrap yard receipts to the guy back there, Randy Dockins." Similarly, defendant claimed that he provided Dockins with "flyers" advertising defendant's offer "to pick up free scrap" and defendant also testified that he turned in check stubs from his jobs to Dockins.

Given defendant's testimony, we conclude that the trial court did not abuse its discretion by allowing Dockins's rebuttal testimony based on the conclusion that defendant opened the door to this testimony. Even if evidence of defendant's parole status would normally be inadmissible and irrelevant, defendant's testimony regarding the proofs of employment he purportedly gave to Dockins opened the door to evidence of his relationship with Dockins and Dockins's monitoring of defendant's employment and whereabouts. *See People v. Ericksen*, 288 Mich. App 192, 201; 793 NW2d 120 (2010). Thus, the trial court did not abuse its discretion by ruling that defendant opened the door and by admitting Dockins's rebuttal testimony. *See People v. Verburg*, 170 Mich. App 490, 498; 430 NW2d 775 (1988).

15

In addition, even assuming Dockins's rebuttal testimony was improper, the admission of testimony concerning defendant's parolee status was harmless. *See* MCR 2.613(A)(1). The trial court provided a cautionary instruction, informing the jury that defendant's status as a parolee should not affect their decision whether defendant was guilty of the charged crimes, and jurors are presumed to follow their instructions and these instructions cured any error. *See People v. Mahone*, 294 Mich. App 208, 212; 816 NW2d 436 (2011). Indeed, the jury acquitted defendant of maintaining a drug house, demonstrating that the jury was not biased against defendant as a result of its knowledge of his parolee status. Moreover, there was ample evidence, outside of defendant's status as a parolee, to support the jury's verdict, including defendant's admissions to police as well as the quantity of drugs and money recovered during the search. Accordingly, even assuming some error, mention of defendant's parolee status was harmless and does not require reversal. MCR 2.613(A).

(ECF No. 10-5 at PageID.297–99.)

Respondent argues that Petitioner's claim, which cites only Michigan Rule of Evidence 403, presents an issue of state law that is not cognizable on habeas review.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000). Accordingly, to the extent that Petitioner asserts that the state courts erred under

Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the *specific kind of evidence* at issue"). Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of evidence that he was on parole. *See Thomas v. Haas*, No. 17-cv-10951, 2020 WL 1459122, at *7 (E.D. Mich. Mar. 20, 2020). Petitioner has not met this difficult standard and, therefore, is not entitled to habeas relief on this claim.

### C.  Missing Witness Instruction

In his third habeas ground, Petitioner claims that the prosecutor engaged in misconduct by failing to produce endorsed res gestae witnesses—Casteneda and Hernandez, the other individuals who were present at 1901 Bradford on November 13, 2014—and the trial court violated his right to due process by failing to give a "missing witness" jury instruction.

The court of appeals denied this claim as follows:

In this case, Hernandez was not endorsed as a prosecution witness. MCL 767.40a(3). Thus, even if he may be considered a res gestae witness, the prosecution had no obligation to produce him to testify at trial. *See People v. Kevorkian*, 248 Mich. App 373, 441; 639 NW2d 291 (2001). Instead, the prosecution was only obligated to provide "reasonable assistance in locating and serving process upon

[Hernandez] upon the request of defendant." *Koonce*, 466 Mich. at 521 (emphasis added). Defense counsel failed to request assistance in obtaining Hernandez's testimony in a timely manner, MCR 767.40a(5), but the prosecution nonetheless provided some assistance. On this record, we cannot conclude that the prosecution failed in its statutory obligation to provide defendant with reasonable assistance, and defendant was not entitled to a missing witness instruction with respect to Hernandez.

In comparison, the prosecution concedes on appeal that Casteneda was endorsed as a prosecution witness. Thus, the prosecution was required to exercise due diligence to secure her presence at trial. *See Eccles*, 260 Mich. App at 388. "The test [of due diligence] is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v. Bean*, 457 Mich. 677, 684; 580 NW2d 390 (1998).

In this case, there is minimal evidence in the lower court record regarding the efforts to produce Casteneda. At trial, a detective answered "no" when asked: "And the other female, [Casteneda], were you able to locate her to serve her a subpoena?" There was no other testimony or evidence regarding the efforts to secure her presence. The trial court, in denying defendant's request for a missing witness instruction with regard to Casteneda, nevertheless found that the prosecution exercised the required due diligence: "I believe there's already been testimony they could not find her. I am not—reasonable efforts. I'm not going to issue the instruction."

While the evidence of the prosecution's efforts to locate Casteneda is sparse and we fail to see how the trial court could have made a due diligence finding on the evidence presented, we nonetheless conclude that defendant is not entitled to appellate relief on the basis of the trial court's refusal to give a missing witness instruction. First, as the appellant, defendant bears the burden of providing this Court "with a record to verify the factual basis of any argument upon which reversal was predicated." *People v. Elston*, 462 Mich. 751, 762; 614 NW2d 595 (2000). The only available record evidence is that police were unable to locate Casteneda to serve her with a subpoena. In connection with his request for a missing witness instruction, defendant did not request further factual development regarding the prosecution's efforts and he cannot point to anything in the record that would establish that the prosecutor failed to exercise due diligence. *Cf. id.* Therefore, reversal is not required.

Second, even if the trial court should have given the requested instruction, any error was harmless. When an applicable jury instruction is not given, the defendant bears the burden of establishing that omission of the requested instruction resulted in a miscarriage of justice. *People v. McKinney*, 258 Mich. App 157, 163; 670 NW2d 254 (2003). That is, "[r]eversal for failure to provide a jury instruction is unwarranted unless it appears that it is more probable than not that the error was outcome determinative." *Id.* At most, if the missing witness instruction had been

given in the case, the jury could have chosen to infer that Casteneda would have testified that the recovered cocaine did not belong to defendant. This testimony would have been largely cumulative to defendant's testimony, which the jury rejected. In addition, in contrast to the assertion that the cocaine did not belong to defendant, a police officer testified about defendant's incriminating admissions and it was undisputed that the large sum of cash recovered in the home was found in *defendant's* jacket, further supporting the conclusion that defendant possessed the cocaine with the intent to distribute. Given the strong evidence of defendant's guilt, we conclude that any error in the trial court's refusal to give a missing witness instruction was harmless.

(ECF No. 10-5 at PageID.300–01.)

Initially, I note that Petitioner's prosecutorial misconduct argument is really that the prosecutor failed to comply with his statutory obligation to produce res gestae witnesses. Petitioner is not entitled to habeas relief on this claim because it is not a basis for federal habeas relief. *Brown v. Burton*, No. 18-2145, 2019 WL 4865392, at *2 (6th Cir. Apr. 9, 2019) (citing *Atkins v. Foltz*, No. 87-1341, 1998 WL 87710, at *2 (6th Cir. Aug. 24, 1988) (per curiam)); *see also Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011) ("Michigan's requirement that prosecutors produce *res gestae* witnesses is a matter of state law, and its enforcement is outside the scope of our review.").

Regarding Petitioner's missing witness instruction claim, a habeas petitioner is entitled to relief on a jury instruction issue only if the failure to give an instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant habeas relief on the ground that a jury instruction was incorrect under state law, *Estelle*, 502 U.S. at 71–72, and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

There is no clearly established federal right to a missing witness instruction. Therefore, Petitioner is not entitled to habeas relief based on the state court's failure to give an instruction

regarding the prosecution's failure to produce res gestae witnesses. *Stadler v. Curtin*, 682 F. Supp. 2d 807, 821–22 (E.D. Mich. 2010), *aff'd Stadler v. Berghuis*, 483 F. App'x 173 (6th Cir. 2012); *accord Sterling v. Berghuis*, No. 1:11-cv-427, 2016 WL 6436675, at *17 (W.D. Mich. Nov. 1, 2016). Accordingly, this claim lacks merit.

### D.    Sufficiency of the Evidence

In his final ground, Petitioner argues that the prosecutor presented insufficient evidence to sustain Petitioner's conviction for possession with intent to deliver less than 50 grams of cocaine.

The Michigan Court of Appeals found that this claim lacked merit:

Defendant next argues in his Standard 4 brief that the prosecution failed to present sufficient evidence to support his conviction. Specifically, defendant maintains that there is no direct evidence tying defendant to the drugs, he argues that the drugs could have belonged to Deeb, and he emphasizes that his mere presence is not enough to establish his possession of the cocaine. Defendant also maintains that there is no evidence the substance found was cocaine.

Whether a defendant's conviction was supported by sufficient evidence is reviewed de novo. *People v. Harverson*, 291 Mich. App 171, 177; 804 NW2d 757 (2010). "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor. The question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v. Tennyson*, 487 Mich. 730, 735; 790 NW2d 354 (2010) (quotation marks, brackets, and citation omitted). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v. Kanaan*, 278 Mich. App 594, 619; 751 NW2d 57 (2008). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v. Henderson*, 306 Mich. App 1, 9; 854 NW2d 234 (2014).

"To convict a defendant of possession with intent to deliver, the prosecution must prove (1) that the recovered substance is a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the substance intending to deliver it." *McGhee*, 268 Mich. App at 622. "Possession may be either actual or constructive." *Wolfe*, 440 Mich. at 520. "Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance." *Id.* Constructive possession is established where the defendant "had the right to exercise control over the cocaine and knew that it was present." *Id.* (quotation marks and citation omitted). "[C]onstructive possession exists when the totality of the circumstances

indicates a sufficient nexus between the defendant and the contraband." *Id.* at 521. "Intent to deliver [may be] inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Id.* at 524.

In this case, contrary to defendant's arguments, there was testimony that the substance in two bags recovered in the apartment tested positive for cocaine in an amount totaling just over 26 grams. This evidence was sufficient to allow a rational jury to find that the recovered substance was cocaine and weighed less than 50 grams, the first two necessary elements. *McGhee*, 268 Mich. App at 622. With respect to the third element, it is undisputed that defendant was not authorized to possess cocaine. *Id.*

The prosecution also presented sufficient evidence to allow a rational jury to conclude that defendant possessed the cocaine. A detective testified that defendant admitted that he sold drugs to support his drug addiction and "to make ends meet." While defendant denied making such admissions, questions of witness credibility were for the jury. *Unger*, 278 Mich. App at 228–229. Beyond defendant's statements, there was additional evidence that defendant possessed the cocaine. Defendant testified that he resided in the apartment, his clothes were found in the only bedroom, the cocaine was found in the apartment's kitchen, and defendant's jacket contained a large amount of cash in small denominations, consistent with street-level drug sales. That the cash was with defendant's jacket strongly supports the inference that he had control of the recovered cocaine. *See Wolfe*, 440 Mich. at 520–521, 525. Under the totality of the circumstances, a rational jury could find a sufficient nexus between defendant and the recovered cocaine to establish constructive possession. *Id.* at 520–521.

Likewise, there was sufficient evidence to allow a rational jury to conclude that defendant intended to deliver the cocaine. Two officers testified that the cocaine was present in delivery quantities. Defendant admitted to police that he sold drugs to support his drug addiction and "to make ends meet," and he stated that he could call someone to obtain more drugs to sell on a "fronted" basis. The apartment contained sandwich bags (commonly used for packaging cocaine) and the box for a scale of the type commonly used to weigh drugs. And, the large amount of cash found in defendant's jacket was in small denominations, consistent with street-level drug sales. Defendant's possession of the money supports the conclusion that he was involved in the sale of the drugs and, indeed, it suggests that he was a principal or primary figure in the sale of the cocaine recovered in the home. *Cf. id.* at 525. Thus, a rational jury could have inferred that defendant possessed the cocaine with the intent to deliver it. *Id.* at 524. Accordingly, the evidence was sufficient to allow a rationale jury to conclude that defendant possessed the cocaine with the intent to deliver it. *See McGhee*, 268 Mich. App at 622.

(ECF No. 10-5 at PageID.301–02 (footnote omitted).)

A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* The habeas court may not review issues of credibility under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction in the light most favorable to the prosecution with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Although the trial court did not cite *Jackson* or other federal cases, its sufficiency of the evidence analysis is consistent with that standard. As the court set forth, there was ample evidence

from which a reasonable jury could have found beyond a reasonable doubt that all of the elements of the offense were satisfied. Even though much of the prosecution's evidence was circumstantial, such evidence, alone, can sustain a guilty verdict under the *Jackson* standard. *See United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011) (citing *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984)).

The trial court's conclusion that sufficient evidence supported the verdict was a reasonable application of the *Jackson* standard. In addition, the court's factual determinations were fully supported by the trial testimony. Accordingly, Petitioner's challenge to the sufficiency of the evidence lacks merit.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review,

but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Recommended Disposition**

For the foregoing reasons, I recommend that the Court deny Petitioner's habeas petition. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: February 10, 2021                                                         /s/ Sally J. Berens
                                                                                 SALLY J. BERENS
                                                                                 U.S. Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).